UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JAMES MCCOY, | |
| Plaintiff, | |
| v. | CAUSE NO. 3:24-CV-712-JD-AZ |
| CODY SCOTT, et al., | |
| Defendants. | |

OPINION AND ORDER

James Mccoy, a prisoner without a lawyer, filed an amended complaint. ECF 12. Under 28 U.S.C. § 1915A, the court must screen the amended complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. To proceed beyond the pleading stage, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A pro se complaint must be given liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nevertheless, a plaintiff can plead himself out of court if he pleads facts that preclude relief. *See Edwards v. Snyder*, 478 F.3d 827, 830 (7th Cir. 2007); *McCready v. Ebay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006).

Mccoy alleges he reported a robbery at his home at approximately 8:30 A.M. on August 30, 2020, to the Logansport Police Department. When they arrived, he was detained for an outstanding arrest warrant. He "consented to an inventory search of missing items" at that time. ECF 12 at 2. While the search was being conducted, Officer Cody Scott "smelled an odor and obtained a search warrant." *Id*. A "number of items" were found in his home pursuant to that warrant, and he was arrested, charged, and convicted of possession of methamphetamine and possession of marijuana. *Id*.; *see also State v. McCoy*, cause no. 09D01-2008-F6-000290 (Cass Sup. Ct. 1 Aug. 31, 2020), available online at: https://public.courts.in.gov/mycase (last visited Oct. 8, 2025).[1] He was incarcerated within the Indiana Department of Correction for two years before his conviction was overturned by the Indiana Supreme Court on a "*Pirtle* violation" via an opinion dated August 29, 2022, which remanded the case for a new trial. *Id*.; *see also McCoy v. State*, 193 N.E. 3d 387 (Ind. 2022).[2] McCoy has sued Officer Scott, the Logansport Police Department, the City of Logansport, and four unknown Jane Doe or John Doe officers who assisted on the scene for monetary damages.

A review of the Indiana Supreme Court opinion mentioned above is instructive and provides a clear recitation of the relevant facts:

---

[1] The court is permitted to take judicial notice of public documents in screening a complaint. *See* FED. R. EVID. 201; *Tobey v. Chibucos*, 890 F.3d 634, 647–48 (7th Cir. 2018); *Daniel v. Cook Cty.*, 833 F.3d 728, 742 (7th Cir. 2016) ("Courts routinely take judicial notice of the actions of other courts or the contents of filings in other courts."); *Mosley v. Ind. Dep't of Corr.*, No. 22-2722, 2024 WL 1651902, at *2 (7th Cir. Apr. 17, 2024) ("Proceedings in state court are proper subjects of judicial notice.").

[2] The original case was ultimately dismissed, and the judgment was amended by the trial court on October 12, 2022, to show the convictions were "reversed and remanded." *See State v. McCoy*, cause no. 09D01-2008-F6-000290 (Cass Sup. Ct. 1 Aug. 31, 2020), available online at: https://public.courts.in.gov/mycase (last visited Oct. 8, 2025).

Officer Cody Scott, while on patrol for the Logansport Police Department, received a tip of a nearby robbery in progress. The pedestrian who reported this tip to Officer Scott described the suspect and identified the victim's residence, adding that the victim himself—James McCoy—had an outstanding warrant for his arrest. Upon arriving at the house, Officer Scott observed McCoy, confirmed his identity, and 'immediately' detained him for the active warrant. Once in handcuffs, McCoy explained that several items from his residence had been stolen and that the robber had driven away just as the officer had arrived. The suspected robber—an acquaintance of McCoy's—eventually returned to the residence, having been located in the vicinity by other officers. At this point, a female approached the scene, identifying herself to Officer Scott as Jalyn Parkevich. The incident, she explained to him, was little more than a domestic dispute. According to Jalyn, she had been at McCoy's house the night before where she 'observed methamphetamine' and where McCoy 'had offered her' this drug in exchange for sex. Evidently angered by this illicit proposition, the alleged robber, Jalyn claimed, sought retaliation by stealing some of McCoy's possessions. Immediately following this exchange, and upon Officer Scott's request, McCoy identified several items belonging to him still inside the suspected robber's vehicle. The officer then asked McCoy if he would escort him inside the house to document any other missing items. McCoy, still in handcuffs, agreed to the request.

Once inside the house, Officer Scott detected the odor of burnt 'spice' (or synthetic marijuana) emanating from upstairs. When they arrived at McCoy's bedroom on the second floor, the officer observed several plastic baggies strewn about the room. Based on these observations, and with knowledge of 'possible narcotics inside the residence,' Officer Scott suspended the investigation and contacted the prosecutor to apply for a search warrant. The subsequent execution of that warrant revealed various drug paraphernalia, including a glass pipe with residue that later tested positive for meth, a vape cartridge containing THC oil, an opened pack of syringes, and a plastic baggie containing a substance that also tested positive for meth. After Officer Scott advised him of his Miranda rights, McCoy admitted that most of the items belonged to him, with the glass pipe apparently used 'for smoking crack cocaine.'

> The State charged McCoy with several offenses: level-6 felony possession of meth, level-6 felony unlawful possession of a syringe, class-A misdemeanor possession of marijuana, and class-C misdemeanor possession of paraphernalia. *See, respectively*, Ind. Code § 35-48-4-6.1(a) (2021); I.C. § 16-42-19-18; I.C. § 35-48-4-11(b)(1); I.C. § 35-48-4-8.3(b)(1).

*McCoy*, 193 N.E. 3d at 388–89 (footnote and internal citations omitted). At trial, the defendant moved to suppress the State's evidence discovered during the search, but the trial court denied the motion. *Id*. On appeal, the Indiana Court of Appeals affirmed, but the Indiana Supreme Court reversed and remanded due to a violation of McCoy's "*Pirtle* protections." *Id*. at 388, 390.

In his federal civil rights case, brought pursuant to 42 U.S.C. § 1983, McCoy claims his constitutional rights were violated by the allegedly unlawful search and seizure that occurred at his residence on August 30, 2020. Unreasonable searches and seizures are prohibited by the Fourth Amendment. *Young v. City of Chicago*, 987 F.3d 641, 644 (7th Cir. 2021). However, the existence of probable cause is a bar to both types of claims:

> Probable cause is a common-sense inquiry requiring only a probability of criminal activity; it exists whenever an officer or a court has enough information to warrant a prudent person to believe criminal conduct has occurred. This is not a high bar. It is assessed objectively based on the conclusions that the arresting officer reasonably might have drawn from the information known to him.

*Id*. (brackets, internal quotation marks and citations omitted).

As an initial matter, McCoy has sued the Logansport Police Department. The police department is not a person or a policy-making unit of government that can be sued for constitutional violations pursuant to 42 U.S.C. § 1983. *See Smith v. Knox County*

*Jail*, 666 F.3d 1037, 1040 (7th Cir. 2012); *Sow v. Fortville Police Dep't*, 636 F.3d 293, 300 (7th Cir. 2011). He has also sued the City of Logansport, but there is no *respondeat superior* liability under 42 U.S.C. § 1983, so the City cannot be held liable solely because it employed individual officers. *J.K.J. v. Polk Cty.*, 960 F.3d 367, 377 (7th Cir. 2020). Nor are there any allegations in the complaint to suggest a viable claim under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). *See e.g., Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 654 (7th Cir. 2021). Finally, McCoy has sued several unknown officers, but he simply alleges they were "assisting" with the search and arrest, which doesn't state a claim.

This leaves Officer Scott. In his complaint, McCoy admits he "consented to an inventory search of missing items" after Officer Scott had detained him on the outstanding unrelated warrant. ECF 12 at 2. He further admits Officer Scott "smelled an odor and obtained a search warrant" after he entered the house. *Id*. The probable cause affidavit[3] and the Indiana Supreme Court opinion quoted above fills in the rest of the gaps—a female witness on the scene stated she had been offered methamphetamine the previous evening by McCoy at his house, Officer Scott detected the odor of synthetic marijuana emanating from upstairs upon entry, and he observed plastic baggies strewn about. *See McCoy*, 193 N.E. 3d at 388–89; *see also* Ex. A. At that point, a search warrant

---

[3] Because the probable cause affidavit is available online to Indiana attorneys but not readily available online to the public—in the spirit of N.D. Ind. L.R. 7-1(f)—the clerk will be directed to attach a copy of that filing to this order as Exhibit A.

was requested and granted;[4] Officer Scott subsequently discovered a plethora of paraphernalia, materials, and drugs, which McCoy admitted to owning and using. *Id*. Based on McCoy's own allegations along with the information described above, the court finds there was adequate probable cause to search the residence, to seize the items found, and to detain McCoy on the drug charges. Accordingly, he has not stated a viable Fourth Amendment claim. *See Young*, 987 F.3d at (officers on the scene had "more than enough information" to arrest and detain the plaintiff on gun charges, and it didn't matter "that the police allegedly falsified evidence at the station later on—they had all the probable cause they needed from the arrest scene alone"); *Washington*, 98 F.4th at 863 (once a judicial determination of probable cause has occurred in a criminal case, a "rebuttable presumption of probable cause" arises in the related civil case); *see also Edwards*, 478 F.3d at 830 and *McCready*, 453 F.3d at 888 (a plaintiff can plead himself out of court if he pleads facts that preclude relief).[5]

---

[4] Officer Scott's probable cause affidavit states, "I contacted the on call prosecutor to see if I could apply for the search warrant for [McCoy's residence] and the red truck. The prosecutor and I then met at the Cass County Court house. I then gave oral testimony to the honorable Judge James K. Muehlhausen about the events that have occurred on 12th St. Judge Muehlhausen then granted me a search warrant for both the red truck and the residence at 1414 12th St." *See* Ex. A; *see also State v. McCoy*, cause no. 09D01-2008-F6-000290 (Cass Sup. Ct. 1 Aug. 31, 2020), available online at: https://public.courts.in.gov/mycase (last visited Oct. 8, 2025) (administrative docket event noting that probable cause was "determined in Superior Court 2").

[5] McCoy may also be claiming that his detention was unconstitutional, but he doesn't expand in any way upon those allegations. In any event, the probable cause analysis discussed in this order applies equally to a possible unreasonable seizure resulting in unlawful detention claim. *See e.g.*, *Young*, 987 F.3d at 644. The Fourth Amendment protects against unlawful pretrial detention, both before and after formal legal process. *Washington v. City of Chicago*, 98 F.4th 860, 863 (7th Cir. 2024). Implicit in any such unlawful detention—whether false arrest, false imprisonment, wrongful detention, or malicious prosecution—is that the arrest and/or detention isn't supported by probable cause. *Wang v. City of Indianapolis*, No. 24-2664, 2025 WL 1000158, at *5 (7th Cir. Apr. 3, 2025) (citing *Hart v. Mannina*, 798 F.3d 578, 587 (7th Cir. 2015)); *see also Lewis v. City of Chicago*, 914 F.3d 472, 476–77 (7th Cir. 2019) ("[T]he constitutional injury arising from a wrongful pretrial detention rests on the fundamental Fourth Amendment principle that a pretrial detention is a 'seizure'—both *before* formal legal process and *after*—and is justified only on

To the extent McCoy is relying on a *Pirtle* violation to save his claims, he may not do so here. In *Pirtle v. State*, the Indiana Supreme Court construed its "State Constitution to require an advisement of rights prior to police obtaining consent to a search from a person in custody." *M.D. v. State*, 108 N.E.3d 301, 302 (Ind. 2018), as amended (Feb. 5, 2024). The Indiana Supreme Court described the rule as follows:

> Although the wording of Section 11 is almost identical to that of the Fourth Amendment, our State Constitution's search and seizure clause is given an independent interpretation and application. In fact, Indiana's Constitution sometimes offers broader protections than those offered by the U.S. Constitution. Amongst those broader protections offered by our State Constitution is the requirement that, prior to obtaining consent to a search, police must explicitly advise a person in custody of her right to consult with counsel. It is unique to Indiana and has no federal counterpart.

*Id*. at 304 (internal citations omitted); *see also U.S. v. LaGrone*, 43 F.3d 332, 337 (7th Cir. 1994) ("A person in custody has no federal constitutional right to consult with an attorney before consenting to a search of his property. However, the Indiana [C]onstitution does afford such a right."). The fact that McCoy was not given a *Pirtle* warning by Officer Scott prior to the search does not violate the Constitution. *See Flynn v. Donnelly*, 793 Fed. Appx. 431, 435 (7th Cir. 2019) (affirming dismissal of plaintiff's complaint and noting, "A violation of state law, however, 'is completely immaterial as to the question of whether a violation of the federal constitution has been established.'")

---

probable cause" to believe that the detainee has committed a crime.") (citing *Manuel v. City of Joliet (Manuel I)*, 580 U.S. 357, 366–67 (2017)). For the reasons explained above, there was ample probable cause to arrest and detain McCoy, so he does not have a viable constitutional claim on that ground either. *See Coleman v. City of Peoria, Ill.*, 925 F.3d 336, 350, 52 (7th Cir. 2019) (recognizing that even erroneous convictions are subject to the rule that the existence of probable cause "defeats" a Fourth Amendment claim for wrongful detention and that "a vacated criminal conviction does not automatically establish that an individual's constitutional rights were violated, or that police officers and prosecutors are necessarily liable under § 1983").

7

(quoting *Thompson v. City of Chicago*, 472 F.3d 444, 454 (7th Cir. 2006)); *see also Bruce v. Guernsey*, 777 F.3d 872, 876 (7th Cir. 2015) ("the constitutionality of a seizure does not depend on the particularities of state law"). Thus, the court finds McCoy has failed to state any viable federal claims related to the search or seizure.

Even if he had, this lawsuit was filed too late. Although the statute of limitations is an affirmative defense, dismissal is appropriate when the complaint makes it clear the claims are time barred. *See e.g., Chicago Bldg. Design, P.C. v. Mongolian H., Inc.*, 770 F.3d 610, 614 (7th Cir. 2014) (plaintiff can "affirmatively plead himself out of court" when the complaint reveals the action is untimely); *Cancer Found., Inc. v. Cerberus Capital Mgmt., LP*, 559 F.3d 671, 674 (7th Cir. 2009); *see also Koch v. Gregory*, 536 Fed. Appx. 659, 660 (7th Cir. 2013) (The plaintiff's "only other argument on appeal is that the district judge erred by considering the statute of limitations prematurely at the screening stage. But the language of [the plaintiff's] complaint plainly showed that the statute of limitations barred his suit; dismissal under § 1915A was therefore appropriate."). The statute of limitations for 42 U.S.C. § 1983 actions in Indiana is two years. *Logan v. Wilkins*, 644 F.3d 577, 581 (7th Cir. 2011). "While state law determines the length of the limitations period, federal law determines the date of accrual of the cause of action." *Id.* (quoting *Behavioral Inst. of Ind., LLC v. Hobart City of Common Council*, 406 F.3d 926, 929 (7th Cir. 2005)). A claim accrues when a plaintiff "knows or should know" that his rights under the Constitution have been violated. *Id.*

In this case, McCoy's claims of unlawful search and/or seizure accrued at the time of the search or seizure—August 30, 2020. *See Neita v. City of Chicago*, 830 F.3d 494,

8

498 (7th Cir. 2016); *see also Evans v. Poskon*, 603 F.3d 362, 363–64 (7th Cir. 2010) (Fourth Amendment claims for search or seizures accrue "immediately" and aren't necessarily incompatible with a conviction); *Dominguez v. Hendley*, 545 F.3d 585, 589 (7th Cir. 2008) ("Fourth Amendment claims for false arrest or unlawful searches accrue at the time of (or termination of) the violation."). The statute of limitations for McCoy's search and seizure claims expired on August 30, 2022. McCoy didn't sign his original complaint until August 20, 2024 (it was later transferred to this court from the Southern District of Indiana and eventually amended), which is almost two years after the statute of limitations had expired. Thus, even if he had stated any viable claims, they would be dismissed. *See e.g., Flynn*, 793 Fed. Appx. at 434 ("The idea that [the plaintiffs] could not have asserted their claims before the Illinois Supreme Court decided that they had been unlawfully arrested, searched, and detained is belied by their own motions to suppress. . . . [They] had grounds to challenge the . . . officers' actions at the time they occurred.").[6]

McCoy's amended complaint does not state any viable federal claims.[7] "The usual standard in civil cases is to allow defective pleadings to be corrected, especially in

---

[6] The *Flynn* court also noted that "the pending appeals in state court did not bar the appellants from suing in federal court. Rather, if the appellants would have timely filed their suit, the district court would have abstained from acting on the § 1983 claims while the related state criminal appeals were ongoing. *See Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); *see also Simpson v. Rowan*, 73 F.3d 134, 137–39 (7th Cir. 1995)." *Flynn*, 793 Fed. Appx. at 434, n.1.

[7] To the extent McCoy may be trying to assert state law claims related to the search and/or seizure, the court declines to exercise supplemental jurisdiction over them. *See* 28 U.S.C. § 1367; *Doe-2 v. McLean County Unit Dist. No. 5 Bd. of Dirs.*, 593 F.3d 507, 513 (7th Cir. 2010); *Higgason v. Barnes*, 95 F.3d 1154 (7th Cir. 1996) ("Without a valid due process claim or any other viable federal claim, the district court properly declined supplemental jurisdiction over the state tort law complaint.").

9

early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). "District courts, however, have broad discretion to deny leave to amend a complaint where the amendment would be futile." *Russell v. Zimmer, Inc.*, 82 F.4th 564, 572 (7th Cir. 2023). For the reasons explained above, such is the case here.

For these reasons, this court:

(1) DIRECTS the clerk to attach the Probable Cause Affidavit as Exhibit A; and

(2) DISMISSES this case pursuant to 28 U.S.C. § 1915A.

SO ORDERED on October 14, 2025

/s/JON E. DEGUILIO
JUDGE
UNITED STATES DISTRICT COURT

10